UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT LOUIS SPINKS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-1261** |
| **THE UNITED STATES OF AMERICA** | **SECTION "O"** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

I.   INTRODUCTION

Plaintiffs Robert Spinks and Jessica Williams sued the United States claiming damages and injuries after a U.S. Army vehicle ("Army vehicle") rear-ended a 2004 Ford F150 truck ("Spinks' truck"), driven by Spinks and owned by Williams, while the vehicles were traveling west on Interstate 12 ("I-12") in Tangipahoa Parish. The Army vehicle had been traveling in the right lane, below the speed limit and at a safe distance behind an unknown truck carrying a sawhorse ("sawhorse truck"). Spinks' truck, which was traveling faster than the Army vehicle, passed the Army vehicle and crossed into the right lane in front of the Army vehicle. Just then, the sawhorse dislodged from the sawhorse truck and landed on I-12, causing Spinks to slam on his brakes and the Army vehicle to collide with the rear of Spinks' truck. Plaintiffs allege negligence against and seek damages from the United States for the damage to the Ford F150, Spinks' medical expenses, Spinks' mental and emotional suffering, and Spinks' lost wages and earning capacity.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 1402(B), *et seq*. Venue is proper in the United States District Court for the Eastern District of Louisiana.

This matter came before the Court for trial without a jury. The Court has carefully considered the testimony of all witnesses, the exhibits admitted into evidence during trial, the record, and the applicable law. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law. To the extent any conclusions of law constitute findings of fact, the Court adopts those conclusions as findings of fact, and to the extent any of the Court's findings of fact are more properly conclusions of law, the Court adopts those findings as conclusions of law.

## II.  FINDINGS OF FACT

1. On August 3, 2018, Sergeant Paul Broussard was driving a 1987 Oshkosh M984A4WO/W, the Army vehicle, westbound on I-12.[1]

2. Broussard was acting in the course and scope of his employment as a Louisiana National Guardsmen under federal orders at all relevant times.[2]

3. Sergeant Jawun Giovanni was serving as Broussard's "A-driver," or assistant driver.[3] As an A-driver, Giovanni's role was to assist the driver in identifying potential hazards and watching the driver's blind spots.[4]

---

[1] ECF No. 63, Uncontested Material Facts at 7–8.
[2] ECF No. 63, Uncontested Material Facts at 9; Testimony of Sergeant Paul Broussard.
[3] ECF No. 63, Uncontested Material Facts at 10.
[4] Deposition of Sergeant Jawun Giovanni at 22.

2

4. I-12 has two westbound lanes. The Army vehicle was traveling in the right lane.[5]

5. It was daytime and the weather was sunny with clear skies.[6]

6. Army policy required the Army vehicle to maintain an eight- to twelve-second following distance from the next closest vehicle.[7] Broussard was trained to reduce speed or change lanes if he spotted a potential hazard while operating the Army vehicle.[8]

7. The Army vehicle was traveling below the speed limit, between 40 and 50 miles per hour.[9]

8. Broussard and Giovanni observed ahead of the Army vehicle a truck carrying a sawhorse, also traveling west in the right lane on I-12.[10] Broussard and Giovanni saw the sawhorse moving and bouncing in the back of the truck.[11]

9. Broussard was traveling at an eight-second following distance behind the sawhorse truck.[12] According to Plaintiff's trucking safety expert Adam Grill, an eight- to ten-second following distance was reasonable in this circumstance because it would take the Army vehicle five to seven seconds to come to a complete stop at a speed of 50 miles per hour.[13]

---

[5] Deposition of Sergeant Jawun Giovanni at 42; Trial Exhibits 1, 4.
[6] Deposition of Sergeant Jawun Giovanni at 39; Testimony of Sergeant Paul Broussard.
[7] Testimony of Sergeant Paul Broussard.
[8] Testimony of Sergeant Paul Broussard.
[9] Testimony of Sergeant Paul Broussard; Deposition of Sergeant Jawun Giovanni at 41–44, 52. Plaintiff Spinks acknowledges that the Army vehicle was traveling below the speed limit. Testimony of Robert Louis Spinks.
[10] Testimony of Sergeant Paul Broussard.
[11] Testimony of Sergeant Paul Broussard; Deposition of Sergeant Jawun Giovanni at 37–38.
[12] Testimony of Sergeant Paul Broussard; Deposition of Sergeant Jawun Giovanni at 37–38.
[13] Testimony of Adam Grill.

10. There was traffic at the time that prevented the Army vehicle from moving into the left lane.[14]

11. At the same time, Spinks was driving alone in a Ford F150, traveling westbound on I-12. Spinks was driving the Ford F150 with permission from his daughter, Williams, who had just purchased the truck.[15]

12. Spinks was traveling at a higher speed than the Army vehicle.[16]

13. Spinks' truck passed the Army vehicle to the left and then jumped in front of the Army vehicle, switching from the left lane into the right lane.[17] The Court credits the testimony of Giovanni, who stated that Spinks' truck "flew past [the Army vehicle] and jumped in front [of the Army vehicle]."[18]

14. When Spinks entered the right lane, Spinks did not provide a safe distance between Spinks' truck and the Army vehicle.[19]

---

[14] Testimony of Sergeant Paul Broussard. Giovanni described the traffic as "flowing," and when asked if the traffic was light, medium, or heavy, he stated the traffic was "medium." Deposition of Sergeant Jawun Giovanni at 43.

[15] Testimony of Jessica Williams. Williams testified that she loaned Spinks the truck to travel back and forth to work. Spinks was driving on a suspended license. ECF No. 63, Uncontested Material Facts at 7.

[16] Testimony of Robert Louis Spinks.

[17] Testimony of Sergeant Paul Broussard; Deposition of Sergeant Jawun Giovanni at 52–53.

[18] Deposition of Sergeant Jawun Giovanni at 52–53.

[19] Testimony of Sergeant Paul Broussard; Deposition of Sergeant Jawun Giovanni at 38, 42. Giovanni testified that Spinks was driving "a little fast, a little erratically, and . . . swerving a little bit." Deposition of Sergeant Jawun Giovanni at 49. Broussard testified that Spinks was not driving dangerously or carelessly, but changed lanes rather aggressively. Testimony of Sergeant Paul Broussard.

Moreover, Spinks testified that another vehicle was between the sawhorse truck and his own truck when he entered the right lane. Sergeant Giovanni testified there was no vehicle between the sawhorse truck and Spinks' truck. Broussard wasn't sure. Whether another vehicle was on the road between the sawhorse truck and Spinks' truck is immaterial to the Court's findings.

15. Before the Army vehicle had time to slow down, the sawhorse fell from the sawhorse truck onto the highway.[20] The Court credits the testimony of both Broussard and Giovanni, who stated that immediately after Spinks' truck entered the right lane in front of the Army vehicle, the sawhorse fell and Spinks slammed on his brakes, stopping dead on the interstate.[21]

16. Spinks slammed on his brakes to avoid hitting the sawhorse.[22] Spinks did not maneuver his truck to the shoulder of the road, even though the shoulder of the road was open.[23]

17. Broussard stomped on the brakes of the Army vehicle. Giovanni could hear the air brakes screaming as Broussard veered the Army vehicle into the left lane to avoid impacting Spinks' truck.[24]

18. The Army vehicle collided with the back-left side of Spinks' truck.[25]

19. The driver of the sawhorse truck did not stop and was not identified.[26]

## III.  CONCLUSIONS OF LAW

1. This case was filed under the Federal Tort Claims Act (FTCA).

2. The FTCA "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of

---

[20] Testimony of Sergeant Paul Broussard.
[21] Testimony of Sergeant Paul Broussard; Deposition of Sergeant Jawun Giovanni at 50, 56–58.
[22] Testimony of Robert Louis Spinks.
[23] Testimony of Robert Louis Spinks. According to Spinks, the additional car in front of Spinks braked and swerved to miss the sawhorse but, similar to the sawhorse truck driver, did not stop.
[24] ECF No. 63, Uncontested Material Facts at 11; Testimony of Sergeant Paul Broussard; Deposition of Sergeant Jawun Giovanni at 56–57.
[25] ECF No. 63, Uncontested Material Facts at 12; Testimony of Sergeant Paul Broussard; Trial Exhibit 6.
[26] Testimony of Officer Neal Zieske.

federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976); 28 U.S.C. §§ 1346(b), 2674.

3. Under the FTCA, the United States' liability for tort claims is "in the same manner and to the same extent as a private individual under like circumstances" according to the law of the state where the alleged tortious action occurred. 28 U.S.C. §§ 1346(b)(1), 2674; *Owen v. United States*, 935 F.2d 734, 737 (5th Cir. 1991).

4. Since the alleged tortious action in this case occurred in Louisiana, Louisiana's substantive tort law applies. 28 U.S.C. § 1346(b)(1).

5. At all times pertinent herein, Broussard was acting within the course and scope of his federal employment with the Louisiana National Guard under federal orders.

6. In Louisiana, the "violation of an ordinance or statute is negligence per se only if the violation ends in a result intended to be protected or prevented by the said ordinance or statute." *Wright v. Travelers Ins. Co.*, 288 So. 2d 374, 376 (La. App. 4 Cir. 1974).

7. "The load on any vehicle shall be securely fastened so as to prevent the covering or load from becoming loose, detached, or in any manner a hazard to other users of the highway." LA. STAT. ANN. § 32:383(B)(1) (2006). "The violation of this statute is negligence per se." *Benoit v. State ex rel. Dep't. of Transp. and Dev.*, 2001-912, (La. App. 3 Cir. 12/28/01), 805 So. 2d 428, 431–32.

8. The operator of the truck carrying the sawhorse did not properly tie it down in violation of § 32:383(B)(1). This unknown driver, an empty-chair defendant, was negligent per se. *See Benoit*, 805 So. 2d at 431–32.

9. But Louisiana is a comparative fault jurisdiction: "where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty[.]" LA. CIV. CODE ANN. art. 2323(A) (2025).

10. Spinks bears the burden of proving each element of liability by a preponderance of the evidence. *See Vinzant v. United States*, No. CIV.A. 1:06-CV-10561, 2010 WL 4961712, at *2 (E.D. La. Nov. 30, 2010), *aff'd*, 458 F. App'x 329 (5th Cir. 2012).

11. "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." LA. CIV. CODE ANN. art. 2315 (2025).

12. "To prevail on a negligence claim, the plaintiff must satisfy the five elements of the duty/risk analysis by proving that (1) the defendant had a duty to conform his conduct to a specific standard, (2) the defendant breached the duty by failing to conform his conduct to the appropriate standard, (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries, (4) the defendant's conduct was the legal cause of the plaintiff's injuries, and (5) the existence of actual damages." *Taylor v. Voigtlander*, 36,670 (La. App. 2 Cir. 12/11/02), 833 So. 2d 1204, 1206.

13. "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." *Jones v. Tim Williams Wood Prod., LP*, No. 3:18-CV-00826, 2020 WL 3815265, at *3 (W.D. La. July 6, 2020) (internal quotations omitted).

14. Under Louisiana law, the "driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent[.]" LA. STAT. ANN. § 32:81(A) (2019).

15. As to the "breach" element of negligence, a following motorist in a rear-end collision is presumed to have breached the § 32:81(A) duty and is therefore presumed negligent. *Mart v. Hill*, 505 So. 2d 1120, 1123 (La. 1987); *Broussard v. Zurich American Ins. Co.*, 44,695 (La. App. 2 Cir. 9/23/09), 23 So. 3d 370, 372.

16. At the time of the subject accident, Broussard was operating the following vehicle and rear-ended Spinks. Accordingly, Broussard is presumed negligent.

17. However, this presumption is rebuttable: "[i]n order to avoid liability, a following motorist who rear-ends another vehicle must prove a lack of fault." *Taylor*, 833 So. 2d at 1206. "[A] a following motorist who rear-ends another vehicle must prove he was not at fault by establishing that he had his vehicle under control, closely observed the lead vehicle, and followed at a safe distance under the circumstances." *Broussard*, 23 So. 3d at 373.

18. Alternatively, "[t]he following motorist may also avoid liability by proving that the driver of the lead vehicle negligently created a hazard which he could not reasonably avoid." *Taylor*, 833 So. 2d at 1206. "[W]hen a following motorist is suddenly confronted with an unanticipated hazard created by a preceding vehicle which the following motorist could not reasonably avoid and a collision ensues, the following driver should be found free from fault." *Evans v. Olinde*, 609 So. 2d 299, 302 (La. Ct. 3 App. 1992), *writ denied*, 616 So. 2d 697 (La. 1993) (finding following motorist successfully overcame presumption of her negligence in collision with a slow-moving, unlighted vehicle, which constituted an unexpected hazard).

19. The Court finds that Broussard took the necessary steps to overcome the presumption of his liability as the rear-ending vehicle. As Broussard traveled on I-12, both he and Giovanni noticed the truck with the sawhorse. Broussard slowed down to increase the distance between the Army vehicle and the sawhorse truck. The Army vehicle was traveling between 40 and 50 miles per hour. Spinks "flew past" the Army vehicle and "darted" into the right lane.[27] According to Broussard and Giovanni, immediately after Spinks crossed in front of the Army vehicle, the sawhorse fell onto the road and Spinks slammed on his brakes.[28] Spinks offered no evidence to impeach Broussard and Giovanni's claim that the sawhorse fell immediately after

---

[27] Deposition of Sergeant Jawun Giovanni at 49, 52.
[28] Spinks estimated that he traveled in the right lane approximately one mile before the sawhorse flew out of the truck, but also testified that the accident happened quickly—so fast that he could only slam on his brakes and didn't have time to veer to the shoulder of the road.

      Spinks entered the right lane, nor did Spinks offer evidence suggesting the men had incentive—financial or otherwise—to fabricate their testimony.

20. Had the sawhorse not fallen onto the highway, the accident would not have occurred. *See Vinzant*, 2010 WL 4961712, at *4 (E.D. La. Nov. 30, 2010) (finding the United States not liable and explaining that the negligence of the non-party third driver in the accident "is not that of the United States, and thus whether he was negligent or whether an unknown, phantom vehicle was responsible is of no import for the United States' liability").

21. "In determining the percentages of fault, the trier of fact must consider the nature of each party's conduct and the extent of the causal relationship between that conduct and the damages claimed." *Tisdale v. Hedrick*, 2022-01072 (La. 3/17/23), 359 So. 3d 484, 490.

22. The Court finds that Broussard had the Army vehicle under control, closely observed the lead vehicle, and was traveling at a safe distance from the car in front of the Army vehicle until Spinks switched into the right lane and created an unavoidable hazard. Present in the Army vehicle with Broussard was an A-driver, Sergeant Giovanni, whose role was to assist Broussard in avoiding hazards. There is no evidence that the men acted carelessly or took their eyes off the road, nor is there evidence that Broussard drove too fast or took too long to apply his foot to the brakes. Broussard was operating the Army vehicle during the day rather than at night to maximize their ability to spot danger. Moreover, it is undisputed that the Army vehicle impacted

the left side of Spinks' truck. This point of collision suggests that Broussard attempted to veer left to avoid the hazard. Although he could not avoid impact, Broussard's evasive maneuver shows that he reacted quickly to try and avoid the collision.

23. The Court finds the sawhorse truck driver and Spinks to be jointly at fault. Both the sawhorse driver and Spinks negligently created a hazard that the Army vehicle could not reasonably avoid.

24. The Court was not persuaded by the testimony of Plaintiffs' expert, Adam Grill,[29] who testified that Broussard failed to apply due care in his operation of the Army vehicle. Specifically, Grill concluded that Broussard failed to take preparatory action to avoid hitting Spinks because he should have foreseen that, on a two-lane highway when the Army vehicle was traveling between 40 and 50 miles per hour, Spinks might suddenly cut in front of the Army vehicle and then slam the brakes. The Court is not convinced. Looking closely at Grill's testimony, Broussard's conduct was largely consistent with Grill's characterization of a driver acting reasonably. According to Grill, an eight- to ten-second following distance was appropriate for the Army vehicle; that was in fact the following distance maintained by the Army vehicle until Spinks' truck entered his lane. According to Grill, a reasonable driver would have slowed down upon seeing the sawhorse wobbling in the back of the truck; Broussard did just that. According to Grill, a reasonable driver would

---

[29] Grill was tendered as an expert in trucking safety and heavy vehicles.

have slowed down when another car jumped in front of him; Broussard started to do so, except he didn't have time because Spinks immediately slammed on his brakes. Grill also testified that Broussard should have been looking ahead 12 to 15 seconds to anticipate danger, and should have considered which direction to steer in an evasive maneuver if encountering a hazard. But Spinks offers no evidence that Broussard failed to take these steps.

25. Grill would also have the Court believe that Broussard should have anticipated that Spinks' truck might dart in front of the Army vehicle, and thus should have slowed down even before Spinks crossed into his lane. But Grill ignores the fact that the Army vehicle was already traveling below the speed limit on the interstate—at a speed of between 40 and 50 miles per hour—and fails to consider the inherent danger in operating the Army vehicle even *more* slowly on a two-lane highway amidst a "medium" amount of traffic.

26. In sum, Spinks fails to show by a preponderance of the evidence that Broussard breached the duty of care in operating the Army vehicle. Accordingly, the United States was not negligent and is therefore not liable for Plaintiffs' damages.[30]

---

[30] At trial, both parties presented extensive evidence as to the cause and extent of Spinks' injuries and damages. Because the Court finds that the United States was not negligent and therefore does not award Spinks any damages, it is unnecessary to examine the extent of those injuries.

12

## IV. CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the Court finds that the United States is not liable to Plaintiffs for any damages as a result of Spinks' injuries or Williams' loss of property, and we hereby enter judgment to that effect.

New Orleans, Louisiana, this 8th day of September, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE